

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00116-CR

———————————————

JEREMY WARREN HARGROVE, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 432nd District Court
Tarrant County, Texas
Trial Court No. 1834631

Before Bassel, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

Appellant Jeremy Warren Hargrove appeals two convictions for aggravated sexual assault of Alice,[1] a child younger than fourteen years. Tex. Penal Code Ann. §§ 22.011, 22.021. In three issues, Hargrove argues that the trial court erred when it denied his motion to suppress evidence gathered as a result of a search warrant, that it erred when it admitted a DNA sample, and that the jury charge improperly conflated the special issue and punishment. We also sua sponte address unpreserved error in the jury charge related to the elements of the offense of aggravated sexual assault of a child and of the related offense of super aggravated sexual assault of a child. Because we find no reversible error, we affirm but will modify the judgment in one regard.

## I. BACKGROUND AND EVIDENCE

Betty, age fourteen in February 2022, and her younger sister Claire, then age ten, are related to Hargrove.[2] Alice was Betty's friend and, in February 2022, was thirteen years old.

### A. Hargrove's Offense

Hargrove, accompanied by his eight-year-old son, drove to pick up Alice, Betty, and Claire on a Friday night. After picking up the three girls, Hargrove stopped at a gas station where he purchased alcoholic beverages.

---

[1] We use pseudonyms to identify minors and others in connection with a criminal matter to protect minors' anonymity. *See* Tex. R. App. P. 9.10(a).

[2] Hargrove was forty-one years old in February 2022.

That night, Alice, Betty, and Hargrove drank alcohol and smoked marihuana that Hargrove provided. The next day, Alice, Betty, Claire, and Hargrove's son went to a recreation center to swim. That night, Alice and Betty again drank alcohol and smoked marihuana, then joined Hargrove in his bedroom.

When Alice said she was tired but wanted to stay awake, Hargrove offered her and Betty what he called a "caffeine pill," which, when pressed by Alice, he acknowledged was methamphetamine. Alice and Betty both took the pills. Betty became "completely spaced out and unresponsive" and had no recollection of events after she took the pill. Alice and Hargrove talked about sex, Hargrove touched both Alice's and Betty's vaginas, and he penetrated Alice's vagina with his penis.

During this time, Claire was playing video games in the living room with Hargrove's son. After Hargrove's son fell asleep, Claire heard concerning sounds coming from Hargrove's bedroom, looked through a crack in the door, and saw Alice and Betty, nude, and Hargrove touching them. Claire spoke with her father and stepmother on her cell phone and told them what she had seen. Betty and Claire's stepmother called Alice's mother. Their stepmother also called Hargrove, who began to clean the bedroom, make the bed, and try to dress the girls.

## B.     Warrant and Arrest

Alice's mother came to the house to retrieve Alice. Betty and Claire's stepmother arrived shortly thereafter. She found Betty nude and unresponsive in the guest bedroom. She roused Betty with some difficulty and left with the girls. She

3

dropped Claire off at home and took Betty to the hospital. Alice's mother took Alice to the same hospital. Nursing staff interviewed both Alice and Betty and performed sexual assault examinations on them. The sexual assault examinations included taking swabbed DNA samples from both girls.

City of Grapevine police went to Hargrove's home and spoke to him about the reported assault; they found him cooperative. Grapevine police obtained and executed a warrant to search Hargrove's home for "any evidence of Delivery of a Controlled Substance or Marihuana to a Child, and Indecency with a Child." After executing the search warrant, police arrested Hargrove. In the jail, police asked Hargrove to consent to a buccal-swab DNA test.[3] He verbally consented and then signed a consent form.

Forensic DNA analyst Farah Plopper analyzed the DNA samples taken from Alice, Betty, and Hargrove. The results of the DNA tests showed the likely presence of Hargrove's DNA in the samples taken from Alice.

## C.    Trial

Hargrove was tried by a jury and found guilty of two felony counts of aggravated sexual assault of a child against Alice. During punishment, the jury found that Hargrove administered or provided a substance capable of impairing Alice's judgment with the intent of committing or facilitating both offenses and that he had been

---

[3]A buccal sample is taken by lightly touching the inside of the cheek with a cotton-tipped swab. *See Maryland v. King*, 569 U.S. 435, 446, 133 S. Ct. 1958, 1969 (2013); *Neighbors v. State*, No. 2-07-176-CR, 2008 WL 2404437, at *1 n.2 (Tex. App.— Fort Worth June 12, 2008, pet. ref'd) (mem. op., not designated for publication).

4

previously convicted of a felony. The jury assessed punishment at life imprisonment for each offense, and the trial court sentenced him accordingly. Hargrove timely filed this appeal.

## II. ANALYSIS

In his first two issues, Hargrove challenges the admission of certain evidence against him, alleging that the search warrant executed at his home was based on insufficient probable cause and that insufficient evidence supported the consent he provided to take a sample of his DNA. In his third issue, Hargrove alleges error in the form of the jury's verdict.

### A. Hargrove's First Issue

In his first issue, Hargrove challenges the probable cause underlying the search warrant executed at his home. Hargrove first argues that the warrant fails to incorporate the attached affidavit and then argues that the search warrant lacks specificity as to the items sought.

In the trial court, Hargrove filed a motion to suppress the evidence obtained pursuant to the search warrant. The trial court held a hearing at which it heard argument from both Hargrove and the State and then issued a written order denying the motion to suppress.

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We defer almost totally to

a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on evaluating credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

The Fourth Amendment to the Constitution establishes a constitutional preference that a search be conducted pursuant to a warrant. *Patterson v. State*, 663 S.W.3d 155, 158 (Tex. Crim. App. 2022) (citing U.S. Const. amend. IV). Typically, the warrant process involves presenting a neutral and detached magistrate with an affidavit that establishes probable cause to conduct a search. *Id.* (citing *Jones v. State*, 364 S.W.3d 854, 854 (Tex. Crim. App. 2012)). Probable cause exists when, under the totality of the circumstances, those circumstances reflect a "fair probability" or substantial chance that contraband or evidence of a crime will be found in a specific location; this is a flexible and "nondemanding" standard. *Bonds v. State*, 403 S.W.3d 867, 873 (Tex. Crim. App. 2013). The trial court's determination whether probable cause existed to issue a search warrant is constrained solely to the affidavit's four corners. *Id.*

### 1. Incorporation of the Affidavit

Whether both the warrant and the supporting application or affidavit may be examined to determine if they are sufficiently particular in their description depends on the extent to which the warrant "cross-references" the supporting documents. *See Greene v. State*, 358 S.W.3d 752, 756–57 (Tex. App.—Fort Worth 2011, pet. ref'd) (citing

6

*Groh v. Ramirez*, 540 U.S. 551, 557–58, 124 S. Ct. 1284, 1289–90 (2004)). A court may construe a warrant with reference to a supporting application or affidavit only if the warrant uses "appropriate words of incorporation, and if the supporting document accompanies the warrant." *Bigler v. State*, No. 2-04-467-CR, 2006 WL 3525388, at *2 (Tex. App.—Fort Worth Dec. 7, 2006, no pet.) (mem. op., not designated for publication) (citing *Groh*, 540 U.S. at 558, 124 S. Ct. at 1289–90).

Hargrove alleges that the warrant "off-handedly refers to the affidavit," but "the affidavit is not clearly incorporated." For this reason, he argues we must construe the warrant without reference to the affidavit. We disagree.

The search warrant in this case states that an affidavit is affixed to the warrant, that the affidavit was subscribed and sworn to by the affiant before the judge issuing the search warrant, and that "grounds for application for issuance of the search warrant exist as stated in the supporting affidavit." This language is sufficient to incorporate the attached affidavit. *See Proctor v. State*, 356 S.W.3d 681, 687 (Tex. App.—Eastland 2011, pet. ref'd) (holding warrant's language of incorporation was sufficient that referred to "the suspected place and premises described in said Affidavit and to search for the property described in said Affidavit"); *Bigler*, 2006 WL 3525388, at *2 (holding warrant's parenthetical language of incorporation was sufficient). Because the warrant sufficiently incorporates the affidavit, we construe the warrant and affidavit together to determine whether the warrant's language was sufficiently particular. *See Green v. State*, 799 S.W.2d 756, 760 (Tex. Crim. App. 1990).

7

**2. Particularity of the Warrant and Affidavit – Place to Be Searched**

A warrant is sufficiently particular as to the place to be searched if it "enables the officer to locate the property and distinguish it from other places in the community." *Bonds*, 403 S.W.3d at 875. However, the standard "does not require perfection in the warrant's description of the place to be searched." *Id.*; *see Harmel v. State*, 597 S.W.3d 943, 962–63 (Tex. App.—Austin 2020, no pet.). The particularity requirement is related to the probable-cause requirement in that it enables the magistrate to determine whether probable cause exists for the search. *Bonds*, 403 S.W.3d at 875 (citing *State v. Barnett*, 788 S.W.2d 572, 576 (Tex. Crim. App. 1990)).

The warrant in this case states that evidence of "Delivery of a Controlled Substance or Marihuana to a Child, and Indecency with a Child" could be found at Hargrove's residence, identified by street address. The affidavit describes the location as having street numbers posted on wooden siding above the front door and as "a single-story structure made of a gray[-]colored brick and white[-]colored siding" with a west-facing front door and north-facing garage driveway. This description is sufficiently specific to allow an officer to identify the property. *See id.* at 875–76 (holding that a description was sufficiently particular that included the street address, use as a residence, city and county, and physical description).

### 3. Particularity of the Warrant and Affidavit – Items to be Seized

A warrant is sufficiently particular as to items to be seized if the description of the items provides enough specifics that the officer executing the warrant will "reasonably know what items are to be seized." *Harmel*, 597 S.W.3d at 963.

As stated, this warrant specified two alleged offenses. The affidavit stated that the evidence may include "any narcotics or drug paraphernalia, cameras or recording devices, and any other items which show or tend to show the commission of" the two named offenses. The affidavit stated that the affiant had reason to believe the offenses occurred because of the following facts:

> [Betty] and [Alice] were both seen walking out of [Hargrove's] bedroom early [February 27, 2022,] naked with [Hargrove] still in the room. This was witnessed by [Betty's] sister, [Claire] who called their step-mother, [who] then came to [Hargrove's] residence and picked the girls up. . . . [Betty] and [Alice] both stated that [Hargrove] had given them something in a vape pen to smoke and an unknown pill, which made them sick. An over-the-counter drug test was performed on [Betty] who tested positive for Methamphetamine and [tetrahydrocannabinol].[4]

Based on the warrant, the officers could seek evidence of controlled substances—namely marihuana and methamphetamine—provided to minors and evidence of the offense of indecency with a child—such as possible DNA evidence or clothing. The affidavit stated that the substances were in the form of a "vape pen" and a pill and that the alleged indecency with a child occurred in Hargrove's bedroom

---

[4]Tetrahydrocannabinol—specifically, delta-9 tetrahydrocannabinol—is a chemical compound found in marihuana in concentrations of more than 0.3 percent by dry weight. *See* Tex. Agric. Code § 121.001; Tex. Health & Safety Code § 481.002(5).

in his residence. Applying the common sense and practical approach required by law, rather than a Procrustean or overly technical one, we find that the description of the items to be seized was sufficient to put an officer on notice of the items to be seized and the places to be searched. *See Proctor*, 356 S.W.3d at 688 (citing *Long v. State*, 132 S.W.3d 443, 448 (Tex. Crim. App. 2004)).

We overrule Hargrove's first issue.

## B.    Hargrove's Second Issue

In his second issue, Hargrove argues that the trial court erred when it admitted DNA evidence over his objection and when it did not provide a jury instruction on Article 38.23. *See* Tex. Code Crim. Proc. art. 38.23.

### 1.    The Challenged Evidence and Objection

During the trial testimony of City of Grapevine Detective Philip Wolan, the State offered a signed consent form to collect a sample of DNA from inside Hargrove's mouth. Without objection from Hargrove, the trial court admitted the consent form for record purposes only.[5]

Hargrove then cross-examined Wolan. Wolan testified that Hargrove had been placed under arrest and transported to the jail before Wolan asked him to provide a DNA sample. Wolan asked Hargrove for the sample, Hargrove verbally consented,

---

[5]The consent form states that City of Grapevine Detective Stubblefield informed Hargrove that he had the right to refuse to provide a DNA sample and reflects that Hargrove freely and voluntarily gave consent.

10

and then Wolan provided him the written consent form to sign. Hargrove asked whether Wolan "afford[ed] [Hargrove] any of his constitutional rights before [Wolan] asked him to give evidence against himself"; Wolan responded, "Prior to asking for the consent for the buccal swab, no." Hargrove then cross-examined Wolan about other matters, namely the warrant return, the photographs taken of Hargrove's home, testing of evidence of controlled substances, chain of custody of evidence, and crime scene reports that had been filed.

On redirect, the State offered the swab into evidence. Hargrove objected, stating, "I do have an objection to [that exhibit]. Violation of Article 38.23.[6] It was taken illegally. That's my objection." The trial court overruled his objection and admitted the swab.

The State argues that this objection failed to preserve the issue of voluntary consent for our review. To preserve an issue for our review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint unless the complaint is apparent from the context. Tex. R. App. P. 33.1(a)(1). An objection must inform the trial judge of the basis of the objection and afford the judge an opportunity to rule. *Alcocer v. State*, 256 S.W.3d 398, 400 (Tex. App.—San Antonio, 2008, no pet.) (mem. op.).

---

[6] *See* Tex. Code Crim. Proc. art. 38.23(a).

11

Because a search and seizure may be illegal for many reasons under Article 38.23, Hargrove's objection was inadequate to put the trial court on notice that his objection was based on the voluntariness of the consent he provided. *See Rodriguez v. State*, No. 01-23-00721-CR, 2025 WL 1373693, at \*12 (Tex. App.—Houston [1st Dist.] May 13, 2025, pet. ref'd) (holding objection was unclear when trial court may have misunderstood whether objection was based in statute or rule). The intervening cross-examination, in light of the generality of the objection, was insufficient to give the trial court notice of the issue. *See Buchanan v. State*, 207 S.W.3d 772, 776 (Tex. Crim. App. 2006) (holding that the basis for the objection must be apparent from the context). Hargrove has not preserved this issue for our review.

Even had the initial objection been sufficiently specific, any error would be harmless because the DNA evidence was later admitted through Plopper's testimony without objection. *See Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010); *Valle v. State*, 109 S.W.3d 500, 509–10 (Tex. Crim. App. 2003). During her testimony, Plopper identified the swabs and testified to the testing process and to the results. Hargrove did not object.

## 2. The Challenged Article 38.23 Jury Instruction

Hargrove also argues that the trial court erred when it failed to give the jury an Article 38.23 instruction.

In any case where evidence raises an issue under Article 38.23, "the jury shall be instructed that if it believes, or has reasonable doubt, that the evidence was obtained

in violation of the provisions of [Article 38.23], . . . the jury shall disregard any such evidence so obtained." Tex. Code Crim. Proc. art. 38.23(a); *see Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012). "The wording is absolute ("the jury shall be instructed") . . . but the triggering mechanism is more complex." *Oursbourn v. State*, 259 S.W.3d 159, 177 (Tex. Crim. App. 2008). A defendant's right to the submission of jury instructions under Article 38.23 is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible. *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007). A defendant must establish three foundation requirements to trigger an Article 38.23 instruction: (1) the evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) the contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence claimed to be gathered involuntarily.[7] *Oursbourn*, 259 S.W.3d at 177; *Madden* 242 S.W.3d at 510.

Hargrove, in his brief, argues that a disputed issue of material fact exists because of Wolan's statement, in response to cross-examination, "that he neither explained to Appellant that he had a right to refuse a DNA sample nor that the detective felt it was

---

[7]The State argues that Hargrove's objection failed to preserve any portion of his second issue for our review. However, the trial court's duty to give an Article 38.23 instruction arises sua sponte if the three foundation requirements are met. *See Contreras v. State*, 312 S.W.3d 566, 574 (Tex. Crim. App. 2010).

important to do so." This both misstates the record and fails to raise a disputed issue of fact.

Hargrove asked Wolan if he "afford[ed] [Hargrove] any of his constitutional rights before [Wolan] asked him to give evidence against himself," to which Wolan responded, "Prior to asking for the consent for the buccal swab, no." This does not raise an issue of fact, as the testimony is entirely uncontested. *See Vasquez v. State*, 225 S.W.3d 541, 545 (Tex. Crim. App. 2007); *Oursbourn*, 259 S.W.3d at 177.

The only affirmative evidence related to consent was Wolan's testimony that Hargrove verbally consented and the consent form Hargrove signed. Because undisputed facts support the voluntariness of the consent, no disputed fact issue material to the question of voluntariness exists. *See Morris v. State*, No. 02-09-00433-CR, 2011 WL 1743769, at *3 (Tex. App.—Fort Worth May 5, 2011, no pet.) (mem. op., not designated for publication) (finding one witness's uncontroverted testimony supporting lawfulness of an officer's investigative detention, absent any contradicting or disputing testimony, did not trigger trial court's duty to provide Article 38.23 instruction). Hargrove raised no issue of fact material to voluntariness and argues none that is affirmatively contested. *Oursbourn*, 259 S.W.3d at 177. Accordingly, we overrule Hargrove's second issue.

## C.   Hargrove's Third Issue

In his third issue, Hargrove argues that the language of the jury verdict form conflated the jury's finding on the special issue—whether Hargrove plied Alice with

14

substances to facilitate the aggravated sexual assault—with its determination of his punishment. *See* Tex. Penal Code §§ 22.021(a)(2)(A)(vi), (f). Hargrove complains that the jury charge did not submit the Section 22.021(f) issue independently of the sentence but provided the jury with a series of verdict forms making the special issue finding along with the sentence. Because we hold that the charge in this case provided substantively correct instructions regarding unanimity and did not conflate the special issue finding with the assessed punishment, we overrule Hargrove's third issue. *See Swearingen v. State*, 270 S.W.3d 804, 810–11 (Tex. App.—Austin 2008, pet. ref'd).

**D.     The Jury Charge and *Gutierrez v. State***

There is one additional issue which we must also address. Punishment proceedings in this case were on April 17, 2025. On April 16, 2025, the Court of Criminal Appeals issued its opinion in *Gutierrez v. State*, clarifying that the finding required under Section 22.021(f) is an element of the offense of "super aggravated sexual assault of a minor," not a punishment issue. 710 S.W.3d 804, 808–09 (Tex. Crim. App. 2025) (citing Tex. Penal Code § 22.021(f)). Hargrove did not object on this basis, and neither Appellant nor the State cited *Gutierrez* in their appellate briefing. We ordered additional, limited briefing on the impact, if any, of *Gutierrez* on this case. Both Hargrove and the State filed letter briefs that provided little guidance and seem to disagree about the offense that Hargrove stands convicted of.

Thus, in determining the effect of *Gutierrez*, we begin with the quandary of deciding what offense Hargrove is convicted of—aggravated sexual assault or super

aggravated sexual assault—again without either party telling us what offense it contends that Hargrove was convicted of. The distinction between the two offenses is described as follows:

> Although the word "super" occurs nowhere in the aggravated sexual assault statute, it is useful to help distinguish between several distinct alternative offenses in the statute. *See* Tex. Penal Code § 22.021. [The] term "super aggravated sexual assault of a child" . . . refer[s] to an offense under § 22.021(f), which imposes a statutory minimum of twenty-five years' imprisonment under certain circumstances. *See id.* § 22.021(f). This contrasts with the term "aggravated sexual assault of a child," which [is] used to refer to an offense under § 22.021(a)(2)(B), which has the same elements as super aggravated sexual assault of a child, absent a finding of the special circumstances that would warrant application of the statutory minimum.

*Gutierrez v. State*, 719 S.W.3d 432, 434 n.2 (Tex. App.—Corpus Christi-Edinburg 2025, no pet.). Further, parole is not available for a party convicted of super aggravated sexual assault. Tex. Gov't Code § 508.145(a)(3) (2017) ("(a) An inmate is not eligible for release on parole if the inmate is under sentence of death, serving a sentence of life imprisonment without parole, or serving a sentence for any of the following offenses under the Penal Code: . . . (3) Section 22.021, if the offense is punishable under Subsection (f) of that section . . . ."). [8]

Here, the trial court's judgments state that the "Offense for which Defendant Convicted" is "AGG SEXUAL ASSAULT CHILD (22.021(a)(2)(B)) - F1 Felony - 1st

---

[8]In 2025, the legislature amended Section 508.145(a). We cite the statute here as it was numbered when the trial court rendered its judgments. *See* Act of May 23, 2025, 89th Leg., R.S., ch. 557 (H.B. 1422), § 8.

Degree." In other words, Hargrove was not adjudged guilty of super aggravated sexual assault of a child. Instead, the judgments merely reference the finding of the special issue in the punishment charge that was submitted based on the assumption that the super aggravating factor was a punishment issue rather than an element of the offense. Further, the judgments decree that Hargrove's sentence is "Life with Parole." Thus, the judgments only convict Hargrove of aggravated sexual assault of a child and impose sentences in accord with such convictions.

To address the change in effect of Section 22.021(f) from a punishment issue to an element of an offense, the Court of Criminal Appeals recently remanded a case to specify that the defendant was convicted of super aggravated sexual assault. *Tucker v. State*, No. PD-1059-24, 2026 WL 387436, at *1 (Tex. Crim. App. Feb. 12, 2026). But *Tucker*'s resolution resulted from the petition for review the State filed after the court of appeals denied its motion for judgment nunc pro tunc. The State's motion had requested—and Tucker agreed—that the trial court judgment should be modified to include Subsection (f)(1) on its "Statute for Offense" field. *Id.* The dissent in *Tucker* suggested that, "at least arguably, because this Court has said that Subsection (f)(1) 'operates more as an element of a super aggravated offense,' it should have been included on the line of the judgment announcing the 'Statute for Offense[.]'" *Id.* at *2 (Yeary, J., dissenting). Here, no one has sought relief to modify either of the judgments' decrees of which offense Hargrove was convicted or the sentence provision that provides his sentence is "with parole."

17

Thus, the error we address based on the effect of *Gutierrez* is not that Hargrove stands convicted of super aggravated sexual assault and that an element of that offense was found in the jury's verdict on punishment. Instead, we view the potential error as being whether Hargrove was harmed by the jury's answer to the sentencing question predicated on the jury's answer that he had committed an act specified in Section 22.021(f) and that the minimum sentence under consideration was 25 years.

We must review jury-charge error, regardless of preservation in the trial court. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). The trial court has an absolute duty to prepare a jury charge that accurately sets forth the law. *Rodriguez v. State*, No. 02-18-00057-CR, 2019 WL 406167, at *3 (Tex. App.—Fort Worth Jan. 31, 2019, no pet.) (mem. op., not designated for publication). In reviewing a jury charge, we first determine whether error occurred; if not, our analysis ends. *Kirsch*, 357 S.W.3d at 649.

Because the finding under Section 22.021(f) is an element of the offense of super aggravated sexual assault—not aggravated sexual assault, the offense of which Hargrove was charged and convicted—and not a punishment issue, the charge was in error. *See Gutierrez*, 710 S.W.3d at 808–09; *see also Lennox v. State*, 730 S.W.3d 425, 428–29 (Tex. Crim. App. 2026) (holding that failure to instruct jury on element of an offense is error subject to egregious harm analysis); *Calton v. State*, 176 S.W.3d 231, 234 (Tex. Crim. App. 2005) (holding that presentation of element of an offense during punishment was in error). Having determined that the charge contains unpreserved

18

error, we must determine whether that error was egregiously harmful. *Alkayyali v. State*, 713 S.W.3d 780, 789 (Tex. Crim. App. 2025) (plurality op.); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see* Tex. Code Crim. Proc. art. 36.19. Jury-charge error is egregiously harmful when it actually affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Alkayyali*, 713 S.W.3d at 789; *Reed v. State*, 680 S.W.3d 620, 626 (Tex. Crim. App. 2023). Merely theoretical harm is not reversible. *Alkayyali*, 713 S.W.3d at 789.

The trial court specifically presented the jury with the question whether Hargrove, "with the intent of facilitating the commission of the offenses set out above, did administer or provide to [Alice] a substance capable of impairing [Alice's] ability to appraise the nature of the act or to resist the act, namely alcohol and/or tetrahydrocannabinol and/or methamphetamine." The jurors were instructed that they had to determine whether the allegation was true or not true.

If they found the allegation true beyond a reasonable doubt, they were instructed to set punishment at confinement "for life, or any term of years not more than 99 years or less than 25 years," but if they found it not true, they were to set punishment at confinement "for life, or any term of not more than 99 years or less than 15 years."[9] The jurors were also instructed that their verdicts had to be by a unanimous vote of all jury members.

---

[9]The charge also included instructions as to the fine amounts that the jury could assess.

19

The charge included four verdict forms—one for each of the two counts finding the element-as-special-issue "true" and requiring the jury to assess punishment of confinement within a range of 25–99 years or for life, and one for each of the two counts finding it "not true" and requiring the jury to assess punishment of confinement within a range of 15–99 years or for life.[10]  In the trial court, outside the presence of the jury, Hargrove objected to the verdict forms and requested the verdict forms "have a separate verdict for the special issue for each count."  Hargrove only requested that the jury be provided a separate question as to the first count's special issue, then to assess punishment in either of two appropriate ranges on two forms, then to repeat the entire process—with separate questions for the special issue and each conditional punishment range—for the second count.  Both parties and the trial court analogized the Section 22.021(f) element to the special issue of sudden passion in cases of murder.[11]  However, neither party objected to the issue not being included as an element of the offense in the guilt–innocence phase of the trial.  The trial court overruled the objection.

---

[10]All verdict forms also included an express finding of "true" to the repeat-offender enhancement to which Hargrove had pleaded "true."

[11]In a prosecution for murder otherwise punishable as a first-degree felony, if a jury finds that a defendant caused the death under the immediate influence of a sudden passion—passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed, arising at the time of the offense and not as a result of former provocation—the offense is punishable as a second-degree felony.  Tex. Penal Code § 19.02(d).

For each count, the jury filled out only the verdict form indicating a "true" finding and assessing punishment as to that count.

"Egregious harm is a fact-specific analysis and is a difficult standard to meet," requiring us to consider: (1) the entire jury charge; (2) the state of the evidence, including the contested issues and probative evidence's weight; (3) the parties' arguments; and (4) any other relevant information. *Id.*; *Almanza*, 686 S.W.2d at 171.

### 1. Considering the Entire Jury Charge

The punishment charge in this case required the jury to unanimously find beyond a reasonable doubt that the Section 22.021(f) element, submitted through two pairs of verdict forms and including express findings as to each count, was true. Nothing suggests that the jury would have answered the question any differently if it had been submitted during the guilt phase instead of during the punishment phase. *See Skinner v. State*, No. 05-17-00153-CR, 2018 WL 3545023, at *7, *9 (Tex. App.—Dallas July 24, 2018, pet. ref'd) (mem. op. not designated for publication) (holding harm not egregious when punishment issue was submitted in the guilt-phase charge). Hargrove arguably benefitted by having the Section 22.021(f) issue placed in the punishment charge because had it been placed in the guilt charge, he would have been convicted of the greater offense of super aggravated sexual assault of a child. *See Gutierrez*, 710 S.W.3d at 806.

## 2. The State of the Evidence

The evidence that Hargrove provided controlled substances to Alice was uncontroverted and included her testimony and that of two witnesses, Betty and Claire, and evidence collected from Hargrove's home under a search warrant. All evidence related to this element was presented during the guilt–innocence phase, as the State called no witnesses and introduced exhibits related only to Hargrove's criminal history during the punishment phase. Hargrove did not challenge the sufficiency of the evidence underlying this finding. This factor weighs against egregious harm. *See Alkayyali*, 713 S.W.3d at 791–92; *Almanza*, 686 S.W.2d at 170–71; *Trejo v. State*, 313 S.W.3d 870, 872 (Tex. App.—Houston [14th Dist.]), *pet. ref'd*, 326 S.W.3d 226 (Tex. Crim. App. 2010).

## 3. The Arguments of Counsel

During closing of the guilt–innocence phase, the State argued that Hargrove had provided alcohol, marijuana, and methamphetamine to Alice to facilitate the commission of the offense. Hargrove did not argue this point before the punishment phase, but both he and the State argued that the jury must make a unanimous finding as to the element-as-special-issue, beyond a reasonable doubt, before considering the applicable sentence. This factor weighs against egregious harm. *See Trejo*, 313 S.W.3d at 873.

### 4. Other Relevant Information

It is relevant to the consideration that, had the jury found the special issue not true, the maximum punishment would still have been a sentence of incarceration for life, which was the punishment the jury assessed to be appropriate. *See Simms v. State*, 905 S.W.2d 720, 724 (Tex. App.—Texarkana 1995, no pet.) (holding harm was not egregious where jury's verdict would not have been different with lower minimum punishment, when sentence was near maximum); *Darden v. State*, No. 06-12-00038-CR, 2013 WL 782624, at *5 (Tex. App.—Texarkana Mar. 1, 2013, pet. ref'd) (mem. op. not designated for publication) (holding harm was not egregious when enhancement defendant pleaded true to increased minimum punishment and jury assessed maximum punishment).

Further, the error in the verdict form arguably benefitted Hargrove because, although the jury made the finding required under Penal Code Section 22.021(f), he was convicted only of the lesser offense under Penal Code Section 22.021(a)(2)(B), and he will therefore be eligible for parole under Government Code Section 508.145(a)(3). *See Silva v. State*, No. 2-08-483-CR, 2010 WL 1136938, at *4 (Tex. App.—Fort Worth Mar. 25, 2010, pet. ref'd) (mem. op., not designated for publication) (citing *Torres v. State*, 493 S.W.2d 874, 875 (Tex. Crim. App. 1973) (holding the appellant could not complain of a charge that was more favorable to his rights than he requested).

These factors weigh against egregious harm.

Having weighed the factors, we find that Hargrove was not egregiously harmed by the trial court's jury charge error.  *See Anguiano v. State*, Nos. 01-11-00867-CR, 01-11-00868-CR, 2013 WL 3771304, at \*7 (Tex. App.—Houston [1st Dist.] July 16, 2013, pet. ref'd) (mem. op., not designated for publication); *Huizar v. State*, 29 S.W.3d 249, 251 (Tex. App.—San Antonio 2000, pet. ref'd).

However, we reform the judgments to remove reference to the jury's unnecessary findings as to "Special Issue Two."  *See Arteaga v. State*, 521 S.W.3d 329, 340–41 (Tex. Crim. App. 2017).

## III.  CONCLUSION

Having overruled each of Hargrove's issues, we affirm the judgments of the trial court as modified.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  July 2, 2026

24